FILED

JUL 2 5 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CLINTON DAWSON, | No. C 05-2253 MHP (pr) |
| Plaintiff, | **ORDER GRANTING DINH'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS; et al., | |
| Defendants. | |

## INTRODUCTION

This case is now before the court for consideration of defendant Quanh Dinh's motion for summary judgment. For the reasons discussed below, the motion will be granted. Defendant Dinh is entitled to judgment as a matter of law on the merits of the Eighth Amendment claim and because this action is barred by the doctrine of res judicata.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

Dr. Dinh examined Dawson only once, on April 15, 2002. At that time, Dawson complained of bleeding while having bowel movements for about two days, frequent bowel movements and constipation with hard stool. Dawson also told Dr. Dinh that he had blood "clots" and bright red blood in the rectum. Dawson states that he told Dr. Dinh a surgical consultation had been ordered, but provides no competent evidence that there was such an order (or who made it) when he saw Dr. Dinh.[1]

Dr. Dinh's notes for the exam showed that he considered Dawson's medical records.

He noted Dawson's history of hemorrhoids since 1998, history of irritable bowel syndrome, and that a June 7, 2001 flexible sigmoidoscopy showed hemorrhoids.

Dr. Dinh physically examined Dawson, including checking his abdomen. Dr. Dinh continued Dawson on the medication for irritable bowel syndrome, prescribing Bentyl 20 mg. to be taken before meals. He advised a blood test of Dawson's complete blood count to rule out blood loss and, if negative, to consider a barium enema x-ray to evaluate the colon. He also advised Dawson to increase his fluid intake and to avoid sudden posture changes to prevent dizziness.

The two tests Dr. Dinh recommended were done within eight days. The blood test was done on April 18, 2002 and yielded normal results, except for a low white blood count. A barium enema x-ray was done on April 23, 2002 and was within normal limits.

Dr. Dinh did not have a follow-up appointment with Dawson and never examined him again. Dawson was, however, seen by other doctors over the next several months. For example, Dr. Luca saw him on May 7, 2002 for his continued rectal bleeding problem. Dr. Luca's notes noted the barium enema result was within normal limits ("WNL").

Dr. Dinh's expert, Dr. Timothy Lee, explained that the April 18, 2002 blood test results showed that the patient was not anemic and the hemoglobin level indicated there was no significant loss of blood. Low white blood cell counts, such as Dawson had, "are non-specific; they can be attributed to multiple causes and fluctuate all the time." Lee Decl., ¶ 6. He further explained that an abnormal loss of blood would not cause only a lowered white blood count while all the other blood components were normal. Dr. Lee explained that the results of the April 23, 2002 barium enema x-ray were within normal limits. The exam confirmed that Dawson had hemorrhoids present but did not uncover any other source of the rectal bleeding or bleeding of the colon.

Dr. Lee opined that, although some physicians might discuss normal blood and normal barium enema test results with a patient, the standard of care did not require Dr. Dinh to do so. Dr. Lee concluded that, at the time Dawson saw Dr. Dinh, he had internal and external hemorrhoids that were being treated conservatively and that surgical removal of the

hemorrhoids was not medically necessary in April 2002. Therefore, Dr. Dinh did not deviate from the standard of care by not referring Dawson to surgery when he treated him.

Before filing the present action, Dawson had filed an action in state court. In March 2004, plaintiff had filed a complaint for medical malpractice against various members of the prison medical staff and based on the same conduct alleged in his federal complaint. Dawson v. Friedman, Kings County Superior Court Case No. 04C-0255. The case was later transferred to Monterey County Superior Court, or a duplicate case was filed in Monterey County Superior Court, as the Monterey County Superior Court is the court that ruled on Dr. Dinh's motion for summary judgment. As it relates to Dr. Dinh, Dawson alleged in his state court complaint that he was seen by Dr. Dinh on April 15, 2002, and he "explained to Dr. Dinh about my history with hemorrhoids, the constant blood loss, the irritable bowel syndrome, and the fact that standard treatment had failed to show any effect." Dinh Request For Judicial Notice, Exh. A, pp. 4 and 15. He alleged that Dr. Dinh breached his duty of care by ignoring data that revealed that Dawson "was in need of curative treatment for his long-suffering from large, bloody hemorrhoids, and that he also suffered from irritable bowel syndrome," and "failing to provide any treatment for the plaintiff's chronic condition, thereby allowing him to continue suffering blood loss, abdominal pain, and dizziness." Id. at 15. Summary judgment was granted in favor of Dr. Dinh and against Dawson because Dawson had failed to meet his burden of proof by providing expert testimony to prove the applicable standard of care and deviation therefrom. See Id., Exh. B.

Dawson had surgery on August 17, 2004. See Dawson Request For Judicial Notice, Exh. D. The surgeon did an "internal and external hemorrhoidectomy with excision of external opening of anal fistula/sinus." Id. An indication for surgery was that on examination, Dawson had "internal hemorrhoids that probably are the source of his bleeding, external hemorrhoids, and possibly an anal fistula." Id. The history and physical prepared before surgery stated that Dawson had several tests: "an unremarkable esophagogastro-duodenoscpy, upper gastrointestinal series and also had a colonoscopy . . . which only revealed a benign sigmoid hyperplastic polyp," and an "unremarkable" CT scan. Id.

3

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Monterey County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

Dawson's verified complaint will be considered in opposition to the motion.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

## DISCUSSION

A.  Eighth Amendment Claim

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1976). To prove that the response of prison officials to a prisoner's medical needs was constitutionally deficient, the prisoner must establish (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994). A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); see also Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Where defendant doctors have chosen one course of action and a plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, ... and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

When, as here, the prisoner seeks only damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each

5

individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Leer explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." Id. In the former case, a broader and more generalized approach to causation is taken. See id.

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

Id. at 633-34 (citations omitted).

The central issue here is whether Dawson has shown the existence of a triable issue of fact that Dinh acted with deliberate indifference. The court concludes that Dawson has failed to meet his burden.

Dr. Dinh saw Dawson only once, on April 15, 2002. At the time Dr. Dinh saw him, Dawson had a 4-year history of hemorrhoids, a history of irritable bowel syndrome, and had a sigmoidoscopy ten months earlier that found hemorrhoids. Dr. Dinh considered Dawson's medical history, physically examined him and continued him on medication for irritable bowel syndrome. He also advised Dawson to increase his fluid intake and to avoid sudden posture changes to prevent dizziness. Dr. Dinh advised a blood test of Dawson's complete blood count to rule out blood loss and, if negative, to consider a barium enema x-ray to evaluate the colon. Both those tests were done within eight days and neither came back with results that indicated a serious problem.

The only evidence as to the meaning of the test results is that provided in the declaration of Dr. Dinh's expert, Dr. Timothy Lee.[2] Dr. Lee explained that the April 18, 2002 blood test results showed that the patient was not anemic and there was no significant loss of blood. Low white blood cell counts, such as Dawson had, "are non-specific; they can be

6

1  attributed to multiple causes and fluctuate all the time." Lee Decl., ¶ 6. He further
2  explained that an abnormal loss of blood would not cause only a lowered white blood count
3  while all the other blood components were normal. Dr. Lee explained that the results of the
4  April 23, 2002 barium enema x-ray were within normal limits. The exam confirmed that
5  Dawson had hemorrhoids present but did not uncover any other source of the rectal bleeding
6  or bleeding of the colon.

7  The evidence is undisputed that (a) although some physicians might discuss normal
8  blood and normal barium enema test results with a patient, the standard of care did not
9  require Dr. Dinh to do so, (b) at the time Dawson saw Dr. Dinh, he had internal and external
10 hemorrhoids that were being treated conservatively, (c) surgical removal of the hemorrhoids
11 was not medically necessary in April 2002. Based on this undisputed evidence, Dr. Lee
12 opined that Dr. Dinh did not deviate from the standard of care by not referring Dawson to
13 surgery when he treated him.

14 Dawson has not presented any admissible evidence to dispute defendant's evidence.
15 He argues that he told Dr. Dinh that a surgical consultation had been ordered, but provides no
16 competent evidence of that. More importantly, Dawson provided no competent evidence to
17 dispute Dr. Lee's opinion that conservative treatment was appropriate in April 2002 and
18 surgical removal of the hemorrhoids was not then medically necessary. Dawson is not a
19 medical doctor and offers no evidence to show that he has any training in medicine, so his
20 opinion as to the proper care for his hemorrhoids and rectal bleeding is not sufficient
21 evidence to defeat the summary judgment motion.

22 Dawson also states that Dr. Dinh has had his medical license revoked in two states
23 due to sub-standard medical treatment. Even if true, there is no evidence that the licensing
24 problem was based on Dr. Dinh's treatment of Dawson. The alleged licensing problem has
25 not been shown to have any probative value as to the quality of the care for this patient.

26 It is difficult to figure out what Dawson thinks should have been done by Dr. Dinh,
27 except that it was other than that which Dr. Dinh did. If Dawson's position is that all
28 bleeding hemorrhoids must be surgically removed, he has provided no evidence to support

this position. By contrast, Dr. Dinh did provide evidence that conservative non-surgical treatment was appropriate under the circumstances present when Dr. Dinh saw Dawson. And to the extent Dawson argues that his rectal bleeding and hemorrhoids are somehow not related, he offers no evidence to support this argument. Likewise, he provides no competent evidence to support his theory that the failure to stop his rectal bleeding in April 2002 – at which time he did not have anemia – caused the anemia that developed seventeen months later in September 2003. The fact that Dawson eventually had surgery does not raise a triable issue of fact that Dr. Dinh was deliberately indifferent in his conservative treatment of the condition two years earlier when blood tests showed Dawson did not have anemia or a significant blood loss.

Dawson fails to present evidence that defendant's conservative treatment amounted to deliberate indifference or no treatment at all. He points to Dr. Dinh's notes as evidence that no treatment was provided, Opposition, p. 2:14-15, but Dr. Dinh's notes do not support Dawson's position. The notes show that the doctor examined the patient, continued the patient on medication for irritable bowel syndrome, told the patient to increase his fluid intake, and told the patient to avoid sudden posture changes. And it is undisputed that the blood test and barium enema x-ray test results did not identify any colo-rectal problem that should have been treated in a particular way in April 2002.

Dawson urges that Dr. Friederichs' responses to his interrogatories support his case. Dr. Friederichs' interrogatory responses tell the court nothing because the interrogatories are not included; without knowing what was asked, Dr. Friederichs' responses are meaningless.

A physician is not required to be a guarantor of a patient's good health, regardless of whether the patient is in prison or at liberty. What the prison physician cannot do is be deliberately indifferent to an inmate's serious medical needs. The undisputed evidence here is that Dr. Dinh conducted a physical exam, reviewed Dawson's medical records, offered treatment, and ordered tests for Dawson that came back negative. Under the undisputed facts, no reasonable jury could return a verdict in Dawson's favor. Dr. Dinh is entitled to judgment as a matter of law on Dawson's Eighth Amendment claim.

B.     Res Judicata

The doctrine of res judicata, or claim preclusion, "'bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action.'" C.D. Anderson & Co., Inc. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987) (citing McClain v. Apodaca, 793 F.2d 1031, 1033 (9th Cir. 1986)).

Dr. Dinh prevailed in a state court action Dawson brought against him for medical malpractice arising out of Dr. Dinh's care for Dawson in April 2002. The state court granted Dinh's motion for summary judgment and denied Dawson's motion for summary judgment "for the same reason – plaintiff has not provided the requisite expert testimony to meet his burden in a medical malpractice case. Flowers v. Torrance Memorial Hospital Medical Center (1994) 8 Cal.4th 992, 1001." See Dinh Request For Judicial Notice, Exh. B, p. 2.

Dawson does not deny that Dr. Dinh prevailed in state court, and instead argues that res judicata does not apply because the § 1983 claim isn't based on the same facts as the medical malpractice case. In attempting to show why his failure on his state court claim should not preclude the § 1983 claim, Dawson engages in some very unpersuasive hair-splitting. He argues that his state court claim concerned the treatment of his hemorrhoid condition while his § 1983 claim concerns the failure to treat the symptom of rectal bleeding that derived from the hemorrhoids. See Opposition, pp. 1, 9. Despite his efforts to make two from one, both the state and § 1983 claims are based on the same basic facts: Dr. Dinh's response to Dawson's complaints on April 15, 2002. The only difference is the legal theory on which he proceeds: professional negligence in state court and deliberate indifference (a § 1983 Eighth Amendment claim) in federal court. There is no doubt that this is a second bite at the apple.

The state court's rejection of Dawson's medical malpractice claim was a final decision on the merits. The case of Flowers, cited by the state court in granting Dinh's summary judgment motion, explained the general rule for proving professional negligence claims in California: "The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a

9

malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman." Id. (citations and quotation marks omitted). The "common knowledge" exception is for res ipsa loquitur type cases, such as a scalpel being left in a patient. Id. The Monterey Count Superior Court's grant of summary judgment with a citation to Flowers is a determination that Dawson had failed to meet his summary judgment burden to show a triable issue of fact that Dr. Dinh's care did not meet the standard of care for his profession.[3]

Dawson previously sued Dr. Dinh on the same facts in state court as he does here. The state court made a final determination in Dr. Dinh's favor; even if there is no formal judgment in the record, the state court's decision has not been shown to be anything but the final ruling on Dawson's claims against Dr. Dinh. The doctrine of res judicata precludes Dawson from challenging, even on a new legal theory, the medical care he complained of in that earlier case. Dr. Dinh's motion for summary judgment is granted on the ground that the § 1983 claim against him is barred by the doctrine of res judicata.

**CONCLUSION**

For the foregoing reasons, defendant Quan Dinh's motion for summary judgment is GRANTED. (Docket # 13.) Dinh is entitled to judgment as a matter of law because plaintiff has failed to show a triable issue of fact that Dinh acted with deliberate indifference to plaintiff's medical needs. Dinh also is entitled to judgment as a matter of law for the separate and additional reason that this action is barred by the res judicata doctrine. The court will wait until the conclusion of this case to enter a judgment so that a single judgment may be entered resolving all claims against all defendants together. The court does, however, contemplate that this order ends the involvement of defendant Quanh Dinh in this action.

IT IS SO ORDERED.

Dated: July 24, 2006

Marilyn Hall Patel
United States District Judge

## NOTES

1. Dawson stated in another action he filed that he told Dinh he was supposed to be seen by a surgeon in 1998. See Dinh Request For Judicial Notice, Exh. A, p. 5. Even if he had an order to be seen by a surgeon in 1998, he has not presented any evidence that this order remained in effect when Dinh saw him, especially in light of the fact that, after the surgical consultation was ordered he had a flexible sigmoidoscopy in 2001, ten months before Dr. Dinh saw him.

2. Dr. Dinh's motion for summary judgment is supported by the declaration of Dr. Timothy Lee, who is licensed to practice medicine in California, is board-certified in internal medicine, and is in private practice in Santa Clara. Dr. Lee offered an opinion on the quality of care by Dr. Dinh based on a review of Dawson's medical records from the CDC and the outside hospital at which Dawson had surgery to remove the hemorrhoids in 2004. Dr. Lee opined that Dr. Dinh complied with the standard of care in his care and treatment of Dawson.

3. Dawson states that he could not afford a professional opinion to satisfy the Flowers requirement. Even if true, this does not show that the state court's decision was not on the merits.

Although there is no per se rule that a § 1983 plaintiff must provide expert testimony on the standard of care in a deliberate indifference case, the lack of competent evidence about the appropriate care for hemorrhoids and rectal bleeding causes problems for Dawson's § 1983 claim just as it did for his medical malpractice claim.