UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CLINTON DAWSON, | No. C 05-2253 MHP (pr) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART** |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS; et al., | |
| Defendants. / | |

## INTRODUCTION

This case is now before the court for consideration of defendants' motion for summary judgment. For the reasons discussed below, the motion will be granted in part. Plaintiff does not dispute that this is the second action against the same defendants on essentially the same facts – the first one being in state court for negligence and this one a § 1983 action for deliberate indifference to medical needs – and instead argues that the current action is not barred by res judicata for several reasons including his alleged lack of a full and fair opportunity to litigate his case in state court. The court rejects plaintiff's arguments and concludes that defendants' motion will be granted because this action appears to be barred by the doctrine of res judicata. However, the state court judgment is not yet a final judgment due to the possibility of review by the California Supreme Court. This action will be stayed until the California Supreme Court acts or the time for Dawson to petition that court lapses.

## BACKGROUND

Dawson is an inmate at the Correctional Training Facility in Soledad ("CTF-Soledad"). He alleged in his complaint that he had severe hemorrhoids and had received inadequate medical care for them at CTF-Soledad for several years.

Dawson alleged in his federal civil rights complaint under 42 U.S.C. § 1983 (the "federal complaint"), that members of the medical staff at the CTF-Soledad failed to correctly diagnose and treat his hemorrhoids that caused blood loss anemia, pain, dizziness, anal spasms and psychological injury. His federal complaint alleged that defendants acted with deliberate indifference to his medical needs in violation of his rights under the Eighth Amendment. His federal complaint alleged that he had received inadequate medical care for his hemorrhoids and related problems from many doctors who had seen him during the time period from June 2001 through the date of filing of the complaint (i.e., June 2, 2005) at CTF-Soledad, including Dr. Alan Rosenthal, Dr. Quan Dinh, Dr. Nicholas Luca, Dr. Timothy Friederichs, Dr. Cesar Sinnaco, and Dr. Chandrika Krishna. The federal complaint also alleged that MTA Robert DeLuna failed to schedule Dawson for an EGD medical examination that had been ordered by a doctor. The federal complaint also alleged that Dawson filed an inmate appeal on October 29, 2002 that defendant Brager did not answer promptly or adequately in that she answered that Dawson would be seen by a specialist but did not make that visit happen.

This court determined that, liberally construed, the federal complaint pled a cognizable Eighth Amendment claim for relief under § 1983 against defendants Dr. Alan Rosenthal, Dr. Quan Dinh, Dr. Nicholas Luca, Dr. Timothy Friederichs. Dr. Cesar Sinnaco,[1] and Dr. Chandrika Krishna for their alleged deliberate indifference to Dawson's serious medical needs in their medical care of his hemorrhoids and related problems. The court further determined that, liberally construed, the complaint also pled a cognizable Eighth Amendment claim for relief under § 1983 against MTA DeLuna who allegedly failed to schedule Dawson for an examination and against Allison Brager who apparently promised but failed to schedule him to be seen by a specialist. Order Of Service, p. 3.

2

Before filing the present action, Dawson had filed an action in state court. In March 2004, plaintiff had filed a complaint for medical malpractice against various members of the prison medical staff and based on the same conduct alleged in his federal complaint. Dawson v. Friedman, Kings County Superior Court Case No. 04C-0255. The case was later transferred to Monterey County Superior Court, or a duplicate case was filed in Monterey County Superior Court, as the Monterey County Superior Court was the court that ultimately considered the case, Dawson v. Friedman, Monterey County Superior Court Case No. M73643.

Dawson does not dispute that the state court complaint and his federal complaint are against the same defendants and based on the same facts. It therefore is not necessary to go into great detail about the course of treatment of Dawson as alleged in the two complaints.

Defendants prevailed in the state court case. On August 23, 2005, the Monterey court issued an order granting defendants' motion for judgment on the pleadings as to defendant Dr. Rosenthal on the ground that he did not treat Dawson, i.e., he had performed a diagnostic sigmoidoscopy and prescribed Fibercon on June 7, 2001 and sent Dawson on his way without any actual treatment for the hemorrhoids. On June 5, 2006, the Monterey court granted summary judgment in favor of defendants Dr. Sinnaco, Dr. Friederichs, Dr. Luca, and MTA DeLuna, based on the opinion of defendants' expert, Jack Stage, M.D., that Dawson's treating professionals fully complied with the standard of medical care in the treatment of Dawson. The Monterey court dismissed Dr. Krishna and medical appeals analyst Brager on summary judgment based on evidence that showed they had no involvement in the medical care of Dawson and, as to Dr. Krishna, Dawson's evidence did not create a triable issue of fact as to Dawson's medical negligence claim.

Dawson appealed. The California Court of Appeal affirmed the judgment in favor of defendants on June 28, 2007 in a reasoned decision.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Monterey County, which is located within the Northern

District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Dawson's verified complaint will be considered in opposition to the motion.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See

4

T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  See id. at 631.

## DISCUSSION

The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel.[2]  See Allen v. McCurry, 449 U.S. 90, 94 (1980).  Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.  See Montana v. United States, 440 U.S. 147, 153 (1979).  The doctrine of res judicata, or claim preclusion, "'bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action.'"  C.D. Anderson & Co., Inc. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987) (citing McClain v. Apodaca, 793 F.2d 1031, 1033 (9th Cir. 1986)).

The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that a federal court give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.  See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).

It is undisputed that defendants prevailed in the state court action Dawson brought against them for medical malpractice arising out of their response to his hemorrhoids and related problems.  The state court granted defendants' motion for summary judgment on the malpractice claim because Dawson failed to offer any medical expert evidence to support his claims of medical malpractice.

Dawson does not dispute that his complaint here is essentially a repeat of the state court complaint against the same defendants and on the same facts (albeit under a different theory – medical malpractice in state court and Eighth Amendment deliberate indifference here).  Instead, he asserts that the doctrine of res judicata does not bar this action for several reasons.  First and foremost, Dawson alleges that res judicata does not apply because he was not given a full and fair opportunity to litigate his case in state court with regard to expert

5

witnesses. Second, he argues that summary judgment in state court in favor of defendants Brager and Krishna violated due process because they were collaterally estopped from filing the motion in the prior litigation. Third, he contends that his claim against defendant Rosenthal is not barred by res judicata because the judgment in Rosenthal's favor was not on the merits. Fourth, he contends that res judicata does not apply because the litigation in state court is still pending. The court rejects each of Dawson's assertions, except that the last one requires that this action be stayed until the state court judgment becomes final under state law.

### 1. Full And Fair Opportunity To Litigate In Earlier Action

The doctrines of res judicata and collateral estoppel do not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue. . . . 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'" Kremer v. Chemical Constr. Corp., 456 U.S. 461, 480-81 & n.22 (1982) (citations omitted). Where the federal court is considering the preclusive effect of a state court judgment under 28 U.S.C. § 1738, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." Kremer, 456 U.S. at 481. In enacting § 1738, Congress intended that federal courts give preclusive effect to state court judgments whenever the courts of the State from which the judgment came would do so – accepting the rules chosen by the State from which the judgment came rather than employing their own rules of res judicata. "The State must, however, satisfy the applicable requirements of the Due Process Clause. A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." Kremer, 456 U.S. at 482 (footnote omitted).

Dawson had no due process right to obtain a state-funded expert witness or to force an expert to work for plaintiff for free. Several reasons lead this court to conclude that neither a state-funded expert nor forcing the expert to work for free is constitutionally required.

6

First, the U. S. Supreme Court has limited the constitutional right of access to the courts; that right likely is based on due process principles and guides consideration of the due process claim. The Court limited the right of access to the courts to two particular types of cases: civil rights actions under 42 U.S.C. § 1983 challenging conditions of confinement and petitions for writ of habeas corpus challenging convictions. See Lewis v. Casey, 518 U.S. 343, 354-55 (1996). Lewis also limits the time frame during which the right exists. The right of access to the courts is the right to bring to a court a grievance. See id. at 354. The state has no duty to "enable the prisoner to discover grievances and to litigate effectively once in court." Id. (emphasis omitted). The right does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Id. at 355. The prison needs to provide the tools inmates need to attack their sentences (on direct appeal or on habeas) and to raise constitutional challenges to the conditions of their confinement. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. Lewis' limited view of that which must be provided to prisoners undermines the precedential value of older cases that relied on Bounds v. Smith, 430 U.S. 817 (1977), which had expressed a rather expansive view of the constitutional right of access to the courts.

State-paid provision of an expert witness for Dawson falls outside the limits identified by Lewis: Dawson's action in state court was neither a § 1983 claim for a constitutional violation in the conditions of confinement nor a habeas petition challenging Dawson's conviction. It was a routine medical malpractice claim for damages. Dawson's inability to hire an expert also fell outside the appropriate time-frame, as the lack of an expert did not preclude the filing of his action but only his ability to litigate effectively once in court.

Second, Dawson's medical malpractice action for damages is different in kind from those cases in which the litigant must use the court because the government essentially monopolizes the means of dealing with the situation, such as the Boddie v. Connecticut, 401 U.S. 371 (1971), case cited by Dawson. In Boddie, the question was whether a state court

7

1 could deny access to the court for litigants who sought judicial dissolution of their marriages
2 but didn't have the means to pay the filing fees. Due process prohibited the state from
3 turning away a divorce-seeking litigant for lack of funds "given the basic position of the
4 marriage relationship in this society's hierarchy of values and the concomitant state
5 monopolization of the means for legally dissolving this relationship." 401 U.S. at 374. The
6 Boddie situation is distinguishable in that a trip to state court was the only way to dissolve a
7 marriage and going to court "is no more voluntary in a realistic sense than that of the
8 defendant called upon to defend his interests in court." Id. at 376-77; cf. Hadsell v IRS, 107
9 F.3d 750 (taxpayer in tax court seeking redetermination of taxes owed). Boddie emphasized
10 that it did "not decide that access for all individuals to the courts is a right that is, in all
11 circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that
12 its exercise may not be placed beyond the reach of any individual." Id. at 382-83. By
13 contrast, Dawson's presence in state court was a voluntary choice by him and not at all
14 compelled; he could have simply foregone his action for damages.

15 Third, Dawson's case is unlike those cases in which the person was separated only by
16 money from evidence known to exist. Dawson wanted an expert so that he could maybe
17 develop evidence that was helpful to his case. He did not know for sure what a medical
18 expert might say, but thought that if he could make inquiries, he might be able to coax
19 statements from defendants' expert or from his own expert that would support his claim that
20 defendants had engaged in medical malpractice. Even at this late date, Dawson does not
21 appear to be able to articulate with any certainty what defendants failed to do, other than it
22 was something other than what they did. See Order Granting Dinh's Motion For Summary
23 Judgment, pp. 7-8. He argues vaguely that defendants should have "elevated" his treatment,
24 but provides no specifics as to what such elevation would have entailed, whether it was
25 advisable for his situation, and whether he would have accepted the elevated treatment. He
26 also has no idea why defendants did not "elevate" his treatment. Dawson may see this as
27 illustrative of his problem, i.e., that he cannot determine what should have been done without
28 an expert. But his view that he was entitled to an expert to figure out why his treatment was

8

deficient and then offer expert testimony in proof of that claim would require that the state fund an expert for every medical malpractice case filed by an indigent. Due process does not require that. The speculative nature of the evidence Dawson wanted access to thus makes his case different from cases such as those where the litigant sought a waiver of the expenses relative to specific evidence known to exist, such as a trial transcript, United States v. MacCollum, 426 U.S. 317 (1976), documents seized pursuant to a search warrant, Hadsell, 107 F.3d at 750, or employment records, id.

  Fourth, even federal law limits what may be spent or waived for indigent federal litigants, thereby indicating that the Due Process Clause does not compel the state governments to do more. The expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress. See United States v. MacCollum, 426 U.S. at 321; Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989). The plain language of 28 U.S.C. § 1915, the in forma pauperis statute, does not authorize the district court to waive fees or expenses paid to witnesses. See Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1992); Tedder, 890 F.2d at 211-12. Section 1915 also does not authorize the court to pay the considerably greater expense of hiring expert witnesses to aid an indigent litigant. See Pedraza v. Jones, 71 F.3d 194, 196 (5th Cir. 1995). The district court may, on its own motion, appoint an expert witness under Federal Rule of Evidence 706, see id. at 197 n.5, and may exercise its discretion to apportion all of the expert witness's costs to one side when one of the parties is indigent, see McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir.), vacated and remanded on other grounds, 502 U.S. 903 (1991), but the existence of discretion to appoint an expert indicates that it is not constitutionally compelled.

  Dawson's right to due process was not violated when the state court did not appoint an expert witness to represent him and did not grant him any other way to obtain access to an expert for free to prove his medical malpractice action seeking fifty million dollars in damages. The state law requirement of expert opinion to establish the standard of care and deviation therefrom was not a procedural rule untethered from any substantive concern: an expert opinion was needed because the medicine involved was beyond the ken of lay

9

persons.[3] Although a medical expert may be necessary to prove that the defendants failed to meet the standard of care in a medical malpractice case, the Due Process Clause does compel the state to underwrite the cost of securing that expertise.

Dawson's other arguments concerning the trial court's errors in ruling on his motions for discovery related to the expert do not raise due process concerns. His arguments that the trial court erred in ruling on his motions relating to the expert could be and were addressed in his appeal in state court. He challenged the reliability of the scientific evidence in state court and it was rejected by the state court. See Opposition, p. 13; Exh. K. The federal district court is a court of original jurisdiction and does not have appellate-type jurisdiction to review decisions from state court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486-87 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). Dawson's numerous asserted challenges to the rulings made in state court would undermine that rule by requiring a federal court to review the state court's decisions by simply putting a due process cloak on arguments that the state court erred in procedural and substantive rulings (such as the ruling regarding whether Dawson served his motion on his opponent). Dawson's approach also would eviscerate the res judicata doctrine as well as the Full Faith and Credit Statute, by forcing review of all adverse rulings in state court based just on conclusory assertions that they denied him a full and fair opportunity to litigate and therefore violated due process. The decision that due process did not require the state to pay for an expert to investigate and prove up Dawson's case makes the rest of the procedural rulings largely beside the point: if the state did not have to provide the expert free of charge to Dawson, the related procedural rulings did not make much difference as they did not cause a due process violation and deprive Dawson of a full and fair opportunity to litigate his claim.[4]

    2.    <u>Claim Against Defendants Brager And Krishna</u>

Dawson claims that defendants Krishna and Brager were "collaterally estopped" from asserting the same arguments on summary judgment in state court that had been rejected by the same court on a motion for judgment on the pleadings. He is wrong on the law in two ways.

10

Collateral estoppel does not apply to a decision by a court in the same case, i.e., a court may reconsider and revisit earlier decisions in that same case. The doctrine more closely related to his argument is the law of the case doctrine, but that doctrine in California is limited to appellate court decisions. See Tally v. Ganahl, 151 Cal.418, 421 (Cal. 1907). Even if Dawson's argument actually had any relevance to the res judicata question this court faces, he is wrong on the law about the preclusive effect of a denial of a motion for judgment on the pleadings. The motion for judgment on the pleadings and for summary judgment have different purposes in a case. "[A] motion for summary judgment or adjudication is not a reconsideration of a motion overruling a demurrer. They are two different motions. To hold that a trial court is prevented in a motion for summary judgment or adjudication from revisiting issues of law raised on demurrer is to condemn the parties to trial even where the trial court's decision on demurrer was patently wrong." Community Mem'l Hosp. of San Buena Ventura v. Ventura, 50 Cal. App. 4th 199 (Cal. Ct. App. 1996).

Further, the state court's decision to grant summary judgment for at least defendant Krishna was based on the lack of evidence to create a triable issue of fact as to professional negligence to the extent Dr. Krishna provided any actual medical services to Dawson, see Def. Exh. 9, June 5, 2006 Order, p.2-3, and that is an issue that could not have been addressed by motion for judgment on the pleadings.

Dawson's argument that he was denied a full and fair opportunity to litigate against these defendants based on the state court's rulings has no merit. The summary judgment entered in favor of defendants Brager and Krishna in state court would preclude this action against them if there was a final judgment in state court.

3.  Claim Against Defendant Rosenthal

Dawson asserts that the claim against Dr. Rosenthal is not precluded by res judicata because there was no judgment on the merits in state court. The argument is not persuasive.

Dr. Rosenthal prevailed in state court on a motion for judgment on the pleadings on the grounds that the complaint failed to allege that he was a treating physician of Dawson and because there was no theory of liability stated against him in the government tort claim

11

Dawson filed with the state. Defendants had argued in state court that Dawson's allegations against Dr. Rosenthal – that he performed a diagnostic sigmoidoscopy exam in June 7, 2001, prescribed Fibercon, and then sent Dawson on his way – did not include any allegation that Dr. Rosenthal actually treated Dawson for hemorrhoids and violated any duty of care in the professional services rendered. Def. Exh. 2, p. 8; Def. Exh. 3, p. 4. That was the argument the state court accepted as the basis for its ruling. See Def. Exh. 9, order signed Aug. 23, 2005, p. 1 (granting judgment for Dr. Rosenthal "for the reasons stated in the moving and reply papers").

As defendants argue, res judicata bars not only every claim that was raised in state court but also bars the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief. A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory. See McClain v. Apodaca, 793 F.2d 1031, 1034 (9th Cir. 1986); see, e.g., Stewart v. U.S. Bancorp, 297 F.3d 953, 957-58 (9th Cir. 2002) (holding that ERISA claim was barred where plaintiff's prior action had been dismissed because his state law claim was preempted by ERISA and he had failed to amend the prior complaint to state a valid ERISA claim); Smith v. City of Chicago, 820 F.2d 916, 920 (7th Cir. 1987) (claim preclusion applies where single core of operative facts forms basis of both lawsuits and plaintiff neglected to raise § 1983 claim until years after it occurred and not until adverse judgment was rendered on cause of action for employment discrimination); Fleming v. Travenol Laboratories, Inc., 707 F.2d 829, 834 (5th Cir. 1983) (claim preclusion applies where factual basis for Title VII claim is same as factual basis for § 1983 claim raised earlier; even though legal theory is different, same wrong is sought to be vindicated in each instance and plaintiff could have amended prior action to include Title VII claim). Dawson could have asserted a § 1983 claim against Dr. Rosenthal in state court as he does in this court. See Trujillo v. County of Santa Clara, 775 F.2d 1359, 1366 (9th Cir. 1985). In both the state court complaint and the federal complaint, the allegations against Dr. Rosenthal pertained to the flexible sigmoidoscopy and advice he gave to Dawson on or about June 7, 2001.

1  Compare Complaint, pp. 3-4 with Def. Exh. 1, p. 4.  The claim against Dr. Rosenthal would
2  be barred under state law if there was a final judgment in state court.  See Keidatz v. Albany,
3  39 Cal. 2d 826, 828 (Cal. 1952) (judgment entered after sustaining of a general demurrer on
4  ground that facts alleged do not constitute a cause of action is judgment on the merits and
5  bars later action).

6        4.      Whether There Is A Final State Court Judgment

7        Dawson argued in opposition to defendants' motion for summary judgment that res
8  judicata does not apply because there was no final judgment in the state court action.
9  Although a judgment had not been entered in the state court action at the time Dawson filed
10 this action, it was entered against Dawson by the Monterey court on August 3, 2006.
11 See Def. Exh. 9.  That judgment was affirmed on appeal quite recently in an unpublished
12 opinion dated June 28, 2007 in Dawson v. Friedman, Cal. Ct. App. Sixth Appellate Dist.,
13 Case No. H0303217.  See Def. Suppl. Memo. of P&As, Exh. 16.   However, this court
14 cannot determine with certainty that the judgment is final because Dawson might still
15 petition for review in the California Supreme Court.  (This is not a determination that such a
16 petition would be timely or meritorious, but simply an observation that this court lacks the
17 needed data on what occurred in the California Supreme Court.)   Under the Full Faith and
18 Credit Statute, this court must give effect to California's law on the finality of judgment.  In
19 California, a judgment is not final for purposes of res judicata until it is free from direct
20 attack.  See Nathanson v. Hecker, 99 Cal. App. 4th 1158, 1163 (Cal. Ct. App. 2002).

21       The state court judgment against Dawson therefore is not yet final.  As a result, this
22 court cannot apply res judicata to enter a judgment as a matter of law in defendants' favor.
23 This court nonetheless had to evaluate the merits of defendants' arguments to determine
24 whether it was possible that res judicata might apply to this action.  The appropriate approach
25 to the situation here is to stay this action until the conclusion of any proceedings in the
26 California Supreme Court.  If no petition for review is filed or if a petition for review is filed
27 and denied, this court will enter judgment in defendants' favor.  If a petition for review is
28 granted, the appropriate course here will depend on what the state court does.  It is a waste of

13

1  judicial resources to go forward with this case until this court receives word on what occurs
2  in the California Supreme Court. The court will require that the parties keep this court
3  apprised of any proceedings in the California Supreme Court. Within sixty days of the date
4  of this order, defendants must file and serve a notice in this action indicating whether
5  Dawson filed a petition for review. If a petition for review is filed, Dawson must file and
6  serve a notice in this action every ninety days indicating the status of the proceedings in the
7  California Supreme Court. If this court receives notice that (a) a petition for review is not
8  filed during the time for filing a petition for review or (b) a petition for review is filed and
9  denied, this court will enter judgment in defendants' favor. This court's intent is that the
10 parties need not further brief the matter.

## CONCLUSION

Plaintiff previously sued defendants on the same facts in state court as he does here. But for the finality of the judgment in state court, it appears that the doctrine of res judicata will preclude plaintiff from challenging, even on a new legal theory, the medical care he complained of in that earlier state court action. Accordingly, defendants' motion for summary judgment is GRANTED in part. (Docket # 29.) The reason the motion is granted only "in part" is because of the need to wait for a final judgment from the state court. The parties are ordered to keep this court apprised of any proceedings in the California Supreme Court as discussed in the preceding paragraph.

Plaintiff's motion to file a supplemental brief is GRANTED (Docket # 35.) The court has considered plaintiff's supplemental brief in ruling on the pending motion for summary judgment.

IT IS SO ORDERED.

Dated: August 6, 2006

_____
Marilyn Hall Patel
United States District Judge

## **NOTES**

1.      Dr. Quanh Dinh earlier moved for summary judgment on the merits of the Eighth Amendment claim and because this action as it related to him was barred by res judicata. Summary judgment was granted in his favor by order filed July 25, 2006. The discussion in this order pertains to all the defendants except Dr. Dinh, as he is not among the moving parties and has already prevailed in this action.

        In opposing Dr. Dinh's motion for summary judgment, Dawson raised a different argument against the application of res judicata. As this court explained: "Dawson does not deny that Dr. Dinh prevailed in state court, and instead argues that res judicata does not apply because the § 1983 claim isn't based on the same facts as the medical malpractice case. In attempting to show why his failure on his state court claim should not preclude the § 1983 claim, Dawson engages in some very unpersuasive hair-splitting. He argues that his state court claim concerned the treatment of his hemorrhoid condition while his § 1983 claim concerns the failure to treat the symptom of rectal bleeding that derived from the hemorrhoids. See Opposition, pp. 1, 9. Despite his efforts to make two from one, both the state and § 1983 claims are based on the same basic facts: Dr. Dinh's response to Dawson's complaints on April 15, 2002. The only difference is the legal theory on which he proceeds: professional negligence in state court and deliberate indifference (a § 1983 Eighth Amendment claim) in federal court. There is no doubt that this is a second bite at the apple." Order Granting Dinh's Motion For Summary Judgment, p. 9. Dawson apparently gave up on that theory, as it is not repeated in the opposition to the current motion.

2.      Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. See Montana v. United States, 440 U.S. at 153.

3.      Although there is no per se rule that a § 1983 plaintiff must provide expert testimony on the standard of care in a deliberate indifference case, the lack of competent evidence about the appropriate care for hemorrhoids and rectal bleeding would cause problems for Dawson's § 1983 claim just as it did for his medical malpractice claim in state court.

4.      Although Dawson refers repeatedly to a "statutory right" to depose the opponent's expert, that too would have depended on whether the state had to pay for the expert or force the expert to work without compensation. As the deposing party, Dawson would have been obligated to pay Dr. Stage for his time spent in the deposition. See Cal. Code Civ. Proc. § 2034.430(b). Dawson's proposal to do the deposition on written questions did not avoid the expert fee problem because the expert still would have to physically attend the deposition (to answer written questions rather than oral ones), and still would have been entitled to his fee.